25CA0272 Byers Peak v BOCC 11-26-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA0272
Grand County District Court No. 23CV30100
Honorable Mary C. Hoak, Judge

---

Byers Peak Properties, LLC, a Colorado limited liability company,

Plaintiff-Appellant,

v.

Board of County Commissioners of Grand County, Colorado; Board of Adjustment of Grand County, Colorado; and Grand County, Colorado,

Defendants-Appellees.

---

JUDGMENT AFFIRMED

Division IV
Opinion by JUDGE SCHOCK
Harris and Johnson, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 26, 2025

---

Holley, Albertson & Polk, P.C., Scott D. Albertson, Eric E. Torgersen, Lakewood, Colorado, for Plaintiff-Appellant

Maxine LaBarre-Krostue, County Attorney, Shira Cohen, Assistant County Attorney, Hot Sulphur Springs, Colorado, for Defendants-Appellees

¶ 1     Plaintiff, Byers Peak Properties, LLC (Byers Peak), appeals the district court's C.R.C.P. 106(a)(4) judgment affirming the denial by the Board of Adjustment of Grand County (BOA) of Byers Peak's request for variances for its proposed development.  We affirm.

I.     Background

¶ 2     In 2018, Byers Peak submitted an application and sketch plan for the development of a "micro cottage" community outside the town of Fraser.  The proposed development consisted of eighty-seven single-family homes on a ten-acre parcel of property.

¶ 3     The proposed development is subject to the Grand County Subdivision Regulations.  Those regulations outline three stages in the subdivision approval process: (1) the sketch plan; (2) the preliminary plat; and (3) the final plat.  Grand Cnty. Subdivision Regs. (GCSR) §§ 4.1-4.3.  At each stage, the Grand County Planning Commission first reviews the submission and approves, conditionally approves, or disapproves it.  GCSR §§ 4.1(2)(b), 4.2(3)(d), 4.3(3)(b).  The submission then advances to the Board of County Commissioners of Grand County (BOCC), which makes the final approval decision.  GCSR §§ 4.1(2)(c), 4.2(3)(e), 4.3(3)(c).

1

¶ 4    The Subdivision Regulations provide that "[l]ot dimensions and sizes shall conform to applicable zoning or other land use requirements."  GCSR § 2.4(1).  But they also authorize the Planning Commission to grant variances from the Subdivision Regulations.  *See* GCSR § 8.1.  Additionally, the Grand County Zoning Regulations authorize the BOA to grant certain zoning variances.  Grand Cnty. Zoning Regs. (GCZR) § 16.2(2).

### A.    Sketch Plan

¶ 5    As set out in the sketch plan, the proposed development did not comply with lot size and setback requirements in the Zoning Regulations.  The lots were far smaller than the zoned minimum lot size and the setbacks were less than the minimum setback requirements.  Byers Peak acknowledged these issues and proposed two potential solutions: (1) it could request zoning variances, or (2) the development could be classified as a multifamily project.

¶ 6    In their recommendation to the Planning Commission, county staff explained that it preferred the first option — setback and lot size variances.  County staff therefore recommended approval of the sketch plan with the following condition (among others) to be addressed in the preliminary plat: "[d]etermination of how to

2

proceed regarding smaller lots and building setbacks that are proposed that may not conform to the zoning code, and will likely require variances from the [BOA]." The Planning Commission approved the sketch plan with the recommended conditions.

¶ 7        The BOCC then held a hearing on the sketch plan. Addressing the Planning Commission's condition, Byers Peak acknowledged that "variances obviously from the [BOA] . . . will be required," including "smaller lots" and "setback variances." The BOCC conditionally approved the sketch plan, adopting the Planning Commission's condition regarding lot size and setback variances and adding the following: "Applicant shall make formal application in a timely manner for proposed variances to the [BOA], preferably before hearing of the Preliminary Plat by the Planning Commission."

## B.        Preliminary Plat

¶ 8        In February 2019, Byers Peak submitted its preliminary plat. The preliminary plat increased the number of units and acreage, now proposing 123 single-family homes on approximately 12.7 acres within a 25.5-acre area that also included three adjacent undeveloped lots intended for future multifamily developments.

¶ 9    Byers Peak had not applied for variances from the BOA as the BOCC had directed.  Instead, it requested variances for lot size and setback requirements from the Planning Commission.  Because the Planning Commission's variance authority was limited to plans covering an area of at least 20 acres, some members questioned whether the Planning Commission could grant a variance for the 12.7-acre micro cottage development alone.  *See* GCSR § 8.1(2)(a).  But after some discussion, the Planning Commission conditionally approved the requested variances and the preliminary plat with the condition that the variances applied only to the 12.7-acre micro cottage development.  In doing so, the Planning Commission clarified that "[f]inal approval of variances happens at final plat."

¶ 10    Byers Peak presented the preliminary plat to the BOCC in January 2022, almost three years later.  In advance of the hearing, county staff explained that the Planning Commission had granted "[s]ignificant variances" from the lot size and setback requirements.  Again, one commissioner questioned whether the Planning Commission had authority to grant variances from zoning requirements concerning lot sizes and setbacks.  So the BOCC

directed Byers Peak to obtain approval of the variances from the BOA. The BOCC then conditionally approved the preliminary plat.

## C. First BOA Variance Request

¶ 11  Byers Peak presented its variance request to the BOA about a month later. The memorandum from county staff explained that the BOCC preferred to have the BOA, rather than the Planning Commission, decide on the requested variances. It further noted that, in making those determinations, the BOA should not take into account the Planning Commission's prior approvals.

¶ 12  The BOA approved the requested variances with the condition that "all variance permits shall be issued within one (1) year . . . after which time, if the variance permit has not been obtained, the applicant can request a one (1) year extension from the [BOA], or it shall become null and void." The BOA and county staff clarified that Byers Peak had "one year to follow through with this," or it could request an extension "on or before the one year mark."

## D. Final Plat

¶ 13  Byers Peak presented its final plat to the Planning Commission in February 2023, two weeks shy of the BOA's one-year deadline for obtaining a permit. The Planning Commission

5

approved the final plat with several conditions, including that a plat note refer to the BOA's approval of the setbacks by variance.

¶ 14 Byers Peak requested a final plat hearing before the BOCC in September 2023. By that time, the BOA variances had expired. So the county community development director, Kristen Manguso, told Byers Peak it would need to request new variances from the BOA.

¶ 15 Manguso had previously served as a county commissioner and was the one who had questioned the Planning Commission's authority to grant variances at the preliminary plat hearing.

### E. Second BOA Variance Request

¶ 16 Byers Peak then submitted a new variance request to the BOA, noting that the variances had previously been approved but had expired. As justification for the variances, Byers Peak cited its reliance on prior approvals and the housing needs of the area.

¶ 17 In a written memorandum, county staff explained that the BOA was "tasked with reviewing this specific request for these variances based upon this request alone" and that "[p]revious applications of decisions . . . should not be considered in the decision on whether or not this specific variance request complies with the Zoning Regulations." The memorandum further explained

that approval of the variance requests would require a written finding by the BOA "stating specifically the exceptional conditions, practical difficulties, or unnecessary hardships involved."

¶ 18    At the hearing, Manguso, in her role as county community development director, reiterated that the variance requests needed to be considered on their own merits and not based on prior approvals. She also told the BOA that the only permissible justification for a variance under the Zoning Regulations was the "exceptional shape, size or topography or other exceptional situation . . . of the building or land."

¶ 19    The BOA denied all the variance requests, citing the lack of any demonstrated hardship or exceptional situation.

F.    C.R.C.P. 106(a)(4) Review

¶ 20    Byers Peak filed a complaint for judicial review of the BOA's denial of the variances under C.R.C.P. 106(a)(4). It alleged that the BOA had exceeded its jurisdiction and abused its discretion by denying the variances after they had been approved by the Planning Commission and "ratified" by the BOCC. Byers Peak also asserted claims for (1) declaratory judgment that the variances were

7

approved and that it was entitled to a final plat hearing with the BOCC and (2) promissory estoppel against the BOA and the BOCC.

¶ 21 After the parties briefed the C.R.C.P. 106(a)(4) claim, the district court issued an order affirming the BOA's denial of the variances. It then certified its order as a final judgment under C.R.C.P. 54(b). The certification order specified that Byers Peak asserted three separate claims for relief, and it directed the entry of judgment on the first — the C.R.C.P. 106(a)(4) claim.

## II. Scope of Appeal

¶ 22 Given the nature of the parties' arguments on appeal, we first clarify what this appeal is about — and what it is not about. Specifically, we are reviewing only the *BOA's* decision to deny Byers Peak's application for a variance *from the BOA*. We are not reviewing the BOCC's imposition of the BOA-variance requirement as a condition of its final approval of the project. Nor are we reviewing the BOCC's resolution of the competing variance rulings by the BOA and the Planning Commission. Not only are the BOCC's decisions beyond the scope of the judgment on appeal, but Byers Peak has not sought review of them under C.R.C.P. 106(a)(4).

¶ 23 Ordinarily, our jurisdiction is limited to the review of final judgments. *L.H.M. Corp., TCD v. Martinez*, 2021 CO 78, ¶ 14; *see* § 13-4-102(1), C.R.S. 2025. A judgment is final if it "ends the particular action in which it is entered, leaving nothing further for the court pronouncing it to do in order to completely determine the rights of the parties involved in the proceeding." *Schaden v. DIA Brewing Co.*, 2021 CO 4M, ¶ 46 (citation omitted). Thus, "[a] judgment is typically not 'final' until the court has ruled on all outstanding claims." *Wolf v. Brenneman*, 2024 CO 31, ¶ 10.

¶ 24 C.R.C.P. 54(b) provides an exception to this general rule, allowing a district court to direct the entry of final judgment as to a portion of the claims in a civil action when it expressly determines that there is no just reason for delay. *Musick v. Woznicki,* 136 P.3d 244, 249-50 (Colo. 2006). But this exception is "quite limited." *Galindo v. Valley View Ass'n*, 2017 COA 78, ¶ 7. When a district court properly directs entry of judgment on fewer than all of the claims in an action, our jurisdiction is confined to review of the rulings on those claims. *McDonald v. Zions First Nat'l Bank, N.A.,* 2015 COA 29, ¶ 39. We may not review rulings on claims for which no final judgment has been entered. *See id.* at ¶¶ 38, 41.

¶ 25    Here, Byers Peak asserted three claims for relief: (1) C.R.C.P. 106(a)(4) review of the BOA's denial of its variance requests; (2) declaratory judgment; and (3) promissory estoppel. The district court ruled on the C.R.C.P. 106(a)(4) claim, and it directed entry of judgment on *that claim* only.[1] *See Brown v. Walker Com., Inc.*, 2022 CO 57, ¶ 31 ("Rule 106(a)(4) review . . . is a standalone suit."). That claim does not seek review of any decision by the BOCC. Thus, because the claim on which final judgment has been entered concerns only the BOA's denial of the variances, our jurisdiction is limited to a review of *that* decision. We thus do not consider the

---

[1] The district court's order affirming the BOA's denial of the variances arguably went beyond the C.R.C.P. 106(a)(4) claim and addressed issues raised in Byers Peak's other two claims. But the court did not enter judgment on those claims. *See* C.R.C.P. 58(a) (requiring entry of judgment); *McDonald v. Zions First Nat'l Bank, N.A.*, 2015 COA 29, ¶ 38 ("[T]he trial court retains jurisdiction to rule on matters that have not been certified as final . . . .").

parties' arguments about whether the BOCC properly conditioned its approval of the project on the BOA's approval of the variances.[2]

## III. BOA's Denial of Variances

¶ 26 The thrust of Byers Peak's argument is that the BOA could not deny its request for variances once those variances had been approved by the Planning Commission. It advances three primary theories to support this claim: (1) the BOA lacked jurisdiction to deny the variances after the Planning Commission had approved them; (2) the Planning Commission's approval was binding on the BOA; and (3) the BOA was estopped from denying the validity of the variances. Byers Peak also argues that Manguso's involvement in

---

[2] Not only did Byers Peak not seek review of the BOCC's decision under C.R.C.P. 106(a)(4), but it is not clear that it could have. To the extent the BOCC's decision to require BOA approval of the variances was a final decision, Byers Peak did not seek review of that decision within the twenty-eight-day limitations period. *See* C.R.C.P. 106(b); *Brown v. Walker Com., Inc.*, 2022 CO 57, ¶¶ 46, 49 (holding that the twenty-eight-day filing deadline "is a strict jurisdictional limitation on Rule 106(a)(4) actions"). And to the extent the relevant decision is the approval or denial of the project, the record does not reflect any final decision by the BOCC *after* the BOA's denial of the variances. *See Buck v. Park*, 839 P.2d 498, 500 (Colo. App. 1992) ("[A] complaint seeking judicial review may be filed only after a governmental body has issued a final decision.").

the second BOA hearing violated its due process right to an impartial decision-maker.  We are not persuaded.

## A.    Standard of Review

¶ 27    In an action under C.R.C.P. 106(a)(4), we "review the decision of the governmental body itself rather than the district court's determination regarding the governmental body's decision." *Bd. of Cnty. Comm'rs v. O'Dell*, 920 P.2d 48, 50 (Colo. 1996).  We do so from the same position as the district court.  *Save Our Saint Vrain Valley, Inc. v. Boulder Cnty. Bd. of Adjustment*, 2021 COA 44, ¶ 26.

¶ 28    Our review is limited to determining whether the governmental body exceeded its jurisdiction or abused its discretion, based on the evidence before it.  C.R.C.P. 106(a)(4)(I).  A body abuses its discretion when its decision is not supported by any competent evidence or when it misapplies the law.  *Save Our Saint Vrain Valley*, ¶ 28.  We will generally defer to a governmental entity's reasonable interpretation of a code that it is charged with administering.  *Whitelaw v. Denv. City Council*, 2017 COA 47, ¶ 8.

¶ 29    In reviewing zoning decisions, we do not sit as a "zoning board of appeals" and substitute our judgment for that of the zoning authorities.  *O'Dell*, 920 P.2d at 50 (citation omitted).  Instead, we

accept the governmental body's assessment of the evidence. *Stor-N-Lock Partners #15, LLC v. City of Thornton*, 2018 COA 65, ¶ 33. And we will not "interfere with the decision of zoning authorities absent a clear abuse of discretion." *O'Dell*, 920 P.2d at 50.

¶ 30 Moreover, in conducting our review, we presume the validity and regularity of the governmental body's proceedings and resolve all reasonable doubts as to the correctness of the governmental body's rulings in favor of the governmental body. *City & County of Denver v. Bd. of Adjustment*, 55 P.3d 252, 254 (Colo. App. 2002). The burden is on the party challenging a governmental body's action to overcome the presumption that the action was proper. *Id.*

## B. BOA's Jurisdiction

¶ 31 We first reject Byers Peak's contention that the BOA lacked jurisdiction even to consider Byers Peak's request for variances after the Planning Commission had granted its own variances.

¶ 32 By statute, the BOA has the authority to "make special exceptions to the terms of the zoning regulations in harmony with their general purpose and intent." § 30-28-117(3), C.R.S. 2025. It is also authorized to grant a variance from the "strict application" of any zoning regulation that would "result in peculiar and exceptional

13

practical difficulties to, or exceptional and undue hardship upon, the owner of such property." § 30-28-118(2)(c), C.R.S. 2025.

¶ 33     This statutory authority is incorporated into section 16.2(2) of the Zoning Regulations, which authorizes the BOA to grant variances to the minimum lot size and yard size "where, by reason of exceptional shape, size or topography of lot, or other exceptional situation or condition of the building or land, practical difficulty or unnecessary hardship would result to the owners of said property from a strict enforcement of these regulations." GCZR § 16.2(2).

¶ 34     Thus, the applicable statutes and the Zoning Regulations unmistakably vest the BOA with jurisdiction over the issuance of zoning variances. *See Bd. of Cnty. Comm'rs v. Moga*, 947 P.2d 1385, 1389 (Colo. 1997) (holding that county board of adjustments had statutory jurisdiction to resolve variance-related dispute).

¶ 35     Indeed, both the Planning Commission and the BOCC told Byers Peak the proposed variances were within the BOA's purview, and at least initially, Byers Peak agreed. The Planning Commission conditioned its approval of the sketch plan on the resolution of the zoning issues that would "likely require variances" *from the BOA*. The Planning Commission also required the final plat to refer to the

*BOA's* approval of the variances.  The BOCC twice conditioned its approvals on variances *from the BOA.*  And consistent with that direction, Byers Peak *asked* the BOA to approve its variances.  The BOA did not exceed its jurisdiction by ruling on that request.

¶ 36     Byers Peak argues that the Planning Commission has exclusive authority to grant variances with respect to subdivisions.  As reflected in the record, there was some question as to whether the Planning Commission had authority to grant the requested variances at all.  The Subdivision Regulations limit the Planning Commission's variance authority to areas of at least 20 acres, and Byers Peak's proposed variance applied only to the 12.7-acre micro cottage development.  *See* GCSR § 8.1(2)(a).  Moreover, the Subdivision Regulations only authorize the Planning Commission to grant variances from those regulations — one of which requires compliance with zoning requirements — not from the Zoning Regulations themselves.  *See* GCSR §§ 2.4(1), 8.1.

¶ 37     But in any event, we are not reviewing the *Planning Commission's* authority.  Like the BOCC's decision, the Planning Commission's decision is beyond the scope of the Rule 106(a)(4) action that is before us on appeal.  The only issue in this appeal is

whether, based on this record, *the BOA* has authority to consider requests for zoning variances. By statute and regulation, it does.

¶ 38     In arguing otherwise, Byers Peak asserts that the Subdivision Regulations should control over the Zoning Regulations because they are more specific. *See Nieto v. Clark's Mkt., Inc.*, 2021 CO 48, ¶ 23 (noting that specific provision controls over general one in the case of an "irreconcilable conflict"). But it is not a matter of which regulations are more specific or which control. The BOCC required Byers Peak to seek variances from the BOA — a decision Byers Peak did not appeal — and Byers Peak did so. The BOA's authority to grant variances is defined by the Zoning Regulations (and statute).

¶ 39     Byers Peak also invokes the doctrine of priority of jurisdiction, under which "the court first acquiring jurisdiction [over] the parties and the subject matter has exclusive jurisdiction." *Town of Minturn v. Sensible Hous. Co.*, 2012 CO 23, ¶ 2 (citation omitted). But this rule applies only "as between competing judicial proceedings." *Id.* at ¶ 3. Even assuming it could be extended to Byers Peak's variance requests, it would not deprive the BOA of jurisdiction to proceed *after* the Planning Commission proceedings had concluded — particularly when Byers Peak subsequently invoked

the BOA's jurisdiction by asking it for a variance. *See id.* at ¶ 2 n.2 (clarifying that "the rule connotes not 'exclusive' jurisdiction, but rather a priority of jurisdiction" (citation omitted)); *Wiltgen v. Berg*, 435 P.2d 378, 381 (Colo. 1967) (noting that rule does not "deprive the court of jurisdiction in the second matter ab initio, but . . . permit[s] the first action to proceed to final judgment before the court may proceed in the second matter").

### C.    Binding Effect of Planning Commission Variances

¶ 40    For similar reasons, the BOA was not bound by the Planning Commission's decision to grant the variances.

¶ 41    The Planning Commission and the BOA are separate governmental bodies with different standards for granting variances.  The Planning Commission granted the variances based on its determination that the development satisfied the conditions of the Subdivision Regulations.  That determination was distinct from the question before the BOA under the Zoning Regulations — whether Byers Peak would suffer "practical difficulty or unnecessary hardship" due to the "exceptional shape, size or topography of [the] lot, or other exceptional situation or condition of the . . . land."  GCZR § 16.2(2).  The BOA was obligated to apply the

standard in the Zoning Regulations, regardless of whether another entity believed a variance may be warranted under a different set of regulations.

¶ 42　Byers Peak asserts that the Planning Commission variances were "final" and did not require the BOA's "approval." But the BOA was not asked to approve or disapprove the Planning Commission's variances. It was asked to grant (or deny) its own variances. Even assuming the Planning Commission's decision was final, the BOCC required Byers Peak to get variances from the BOA — a requirement that would have been meaningless if the BOA could do nothing more than adhere to the Planning Commission's decision.

¶ 43　In short, we see no basis for Byers Peak's position that the BOA *had* to follow the Planning Commission's decision. To the contrary, as a separate entity applying a different standard, the BOA could reasonably reach a different conclusion, as it did.[3]

---

[3] Byers Peak does not argue that the BOA was bound by its own prior approval of the requested variances more than a year earlier. In approving those variances, the BOA made clear that they would expire in a year unless Byers Peak requested an extension.

## D.    Estoppel

¶ 44    Byers Peaks next argues that "the county" was estopped from denying the validity of the Planning Commission variances because Byers Peak reasonably relied on those variances.  To the extent this is a challenge to the BOCC's condition of approval or an argument regarding Byers Peak's promissory estoppel claim, we do not have jurisdiction to consider it because it is outside the scope of the district court's Rule 54(b) certification.  *See McDonald*, ¶ 39.  To the extent it could be construed as an argument that the BOA was estopped from denying the requested variances, we disagree.

¶ 45    Equitable estoppel is "founded on principles of fair dealing and is designed to aid the law in the administration of justice where, without its aid, injustice might result."  *Colo. Health Consultants v. City & County of Denver*, 2018 COA 135, ¶ 37.  A party alleging equitable estoppel must show a detrimental change in their position in reasonable and justifiable reliance on the other party's conduct or misrepresentation.  *Id.* at ¶ 40.  The other party "must have intended that its representation be acted on," and the party asserting estoppel "must be ignorant of the actual facts."  *Id.*

¶ 46    Promissory estoppel, on the other hand, is a quasi-contractual claim that requires (1) a promise; (2) that the promisor should have reasonably expected would induce action or forbearance by the promisee; (3) that the promisee reasonably relied on to their detriment; and (4) that must be enforced to prevent injustice. *Cherokee Metro. Dist. v. Simpson*, 148 P.3d 142, 151 (Colo. 2006); *Bd. of Cnty. Comm'rs v. DeLozier*, 917 P.2d 714, 716 (Colo. 1996).

¶ 47    Whether under a theory of equitable estoppel or promissory estoppel, Byers Peak's argument fails because the record does not reflect any representation or promise that the BOA would approve the requested variances.  At each stage of the process, each county entity made clear that variances from the BOA would be required.

¶ 48    At the sketch plan stage, before the Planning Commission had granted the variances, both the Planning Commission and the BOCC indicated that Byers Peak should seek variances from the BOA.  At the preliminary plat stage, when the Planning Commission approved the variances, it cautioned that final approval would not happen until the final plat.  The BOCC then clarified that, notwithstanding the Planning Commission variances, Byers Peak would need variances from the BOA.  When the BOA initially

granted the variances, it made clear that those variances were only good for one year. And at the final plat phase, the Planning Commission required the plat to refer to the BOA approval. This consistent inclusion of the BOA-approval requirement belies any assertion that such approval was a foregone conclusion or that any county entity intended or expected Byers Peak to act as if it was.

¶ 49    For the same reasons, Byers Peak cannot show that it reasonably and justifiably relied on a belief that the BOA would grant the variances or that the Planning Commission variances would be enough. The BOCC expressly told it otherwise. To the extent Byers Peak expended resources based on the assumption that the BOA would grant the variances, it did so advised of the risks. *See Colo. Health Consultants*, ¶ 40 (explaining that the party asserting estoppel "must be ignorant of the actual facts").

### E.    Procedural Due Process

¶ 50    Byers Peak also asserts that Manguso's involvement in its second BOA variance request as county staff — after she had introduced the BOA variance condition as a county commissioner at the preliminary plat stage — violated its right to procedural due process. *See No Laporte Gravel Corp. v. Bd. of Cnty. Comm'rs*, 2022

COA 6M, ¶ 31 (holding that alleged due process violations "can be read as a basis to establish that the Board abused its discretion").

¶ 51    Byers Peak did not raise this issue before the BOA. Because we are reviewing the BOA's decision and not the district court's, *see O'Dell*, 920 P.2d at 50, we would not ordinarily address an argument raised for the first time in a C.R.C.P. 106(a)(4) action, *see Abromeit v. Denv. Career Serv. Bd.*, 140 P.3d 44, 53 (Colo. App. 2005). But we may review unpreserved claims of *judicial* bias to the extent they support a claim of actual bias. *Bocian v. Owners Ins. Co.*, 2020 COA 98, ¶ 52. We will assume that we may do the same for a quasi-judicial decision-maker under C.R.C.P. 106(a)(4).

¶ 52    Quasi-judicial proceedings are "subject to the basic requirements of due process," including that of an impartial decision-maker. *No Laporte Gravel Corp.*, ¶¶ 41, 44. But quasi-judicial decision-makers are not "held to the more rigorous disqualification standards applicable to judicial officers." *Id.* at ¶ 44. Thus, to establish a due process violation in a quasi-judicial proceeding based on the partiality of the decision-maker, a party must show that "actual bias or a risk of actual bias exist[ed] so as to compromise the neutrality of the quasi-judicial actor." *Id.*

22

¶ 53    Byers Peak cannot make that showing for the fundamental reason that Manguso was not a "quasi-judicial actor" at the second BOA variance hearing.  She was not a member of the BOA and did not vote on the variance request.  Her sole role was to advise the BOA on behalf of the county community development department. Even if Manguso exerted some influence in that role, Byers Peak does not point to anything in the record to indicate that her involvement resulted in any "actual bias" on the part of the decision-makers that would "compromise [their] neutrality."  *Id.*

¶ 54    Moreover, Byers Peak's contention that Manguso was biased against it is based entirely on her expressed position — as a county commissioner — that BOA approval of the variances was required. But without more, an adverse position does not demonstrate bias. *Cf. Bocian*, ¶ 57 ("Unless accompanied by an attitude of hostility or ill will toward a party, a ruling by a judge on a legal issue is insufficient to show bias . . . ."); *People in Interest of A.P.*, 2022 CO 24, ¶ 32 ("[A]dverse legal rulings . . . are unlikely to provide grounds for a bias claim . . . .").  Notably, as a commissioner, Manguso expressed no position on whether the variances should be approved by the BOA and, far from expressing hostility toward Byers Peak,

23

suggested waiving the application fee to ease the way to approval. She then voted to conditionally *approve* the proposed development.

¶ 55    At most, the record indicates that Manguso believed, based on her interpretation of the pertinent regulations, that the requested variances (1) required approval from the BOA and (2) did not meet the standard for such approval. Byers Peak disagrees with both points. But it has not shown that BOA's ultimate agreement with Manguso, and its resulting adverse decision, were somehow indicative of actual bias on the part of the BOA. Without such a showing, Byers Peak's procedural due process argument fails.

IV.    County's Failure to Hold a BOCC Hearing

¶ 56    Finally, characterizing its declaratory judgment claim as one for mandamus, Byers Peak argues that the district court abused its discretion by refusing to order the BOCC to conduct a hearing on its final plat. It argues that once the Planning Commission had approved the final plat, the BOCC had a ministerial duty to schedule a final hearing, which it violated by conditioning that hearing on the BOA's approval of Byers Peak's requested variances.

¶ 57    For the reasons above, this argument is outside the scope of the Rule 54(b) judgment on appeal. Although the district court

24

rejected Byers Peak's ostensible mandamus claim, it did not certify a final judgment on that claim. To the contrary, any such claim appears to arise from Byers Peak's claim for declaratory judgment, which the district court expressly did *not* certify. *See McDonald*, ¶ 37 (explaining that the C.R.C.P. 54(b) certification "signals to the parties and the appellate court that the [district] court 'considers its order as finally deciding *a particular claim*'" (emphasis added) (citation omitted)); *cf. E. Cherry Creek Valley Water & Sanitation Dist. v. Greely Irrigation Co.*, 2015 CO 30M, ¶ 12 ("An appellate court's jurisdiction to entertain the appeal of a judgment certified pursuant to Rule 54(b) depends upon a correct certification."). We therefore lack jurisdiction to review it. *See McDonald*, ¶¶ 39, 41.

## V. Disposition

¶ 58    The judgment is affirmed.[4]

JUDGE HARRIS and JUDGE JOHNSON concur.

---

[4] Because the judgment is affirmed, Byers Peak's request for appellate costs is denied. *See* C.A.R. 39(a)(2).